Gregory G. Pinski, Bar No. 5254
Keith D. Marr, Bar No. 5999
J.R. Conner, Bar No. 36402194
CONNER, MARR & PINSKI, PC
P. O. Box 3028
Great Falls, MT 59403-3028
Phone: (406) 727-3550
Fax: (406) 727-1640
Email: greg@mttrials.com
keith@mttrials.com
jr@mttrials.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CHRIS THACKER, MD; BENJAMIN BERGSTROM, DNP, CRNA; KIRSTEN VIRAG, RN; SARAH CARSON, RN-BSN; KATHERINE L. BURKE, RN; MELANIE BRENNAN, RN; MICHELLE MURI, RN; RONNI BOYCE, RN; CHARITY GESSAMAN, RN; SAMANTHA PESCOSOLIDO, RN, and SARAH SHELDON, RN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MAXIMUS, INC. and DOES 1-50,<br><br>Defendant. | Cause No. ______________________<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

COME NOW, Plaintiffs Chris Thacker, MD, Benjamin Bergstrom, DNH, CRNA, Kirsten Virag, RN, Sarah Carson, RN-BSN, Katherine L. Burke, RN, Melanie Brennan, RN, Michelle Muri, RN, Ronni Boyce, RN, Charity Gessaman, RN, Sarah Pescosolido, RN, and Sarah Sheldon, RN, individually and on behalf of all others similarly situated, by and through their attorneys and for their Class Action Complaint and Jury Demand against Defendant Maximus, Inc. and Does 1-50, allege:

## INTRODUCTION

1. This is an action brought individually and on behalf of similarly situated Montana-licensed healthcare professionals monitored by the Montana Medical Assistance Program ("MMAP") and subjected to punitive, expensive, and clinically unwarranted monitoring practices after the State of Montana contracted program administration to Defendant Maximus, Inc. ("Maximus"). Plaintiffs allege Maximus placed profit ahead of participant safety and recovery, imposed requirements untethered to evidence-based standards, obstructed access to records and clinical information, and interfered with class members' ability to work – causing Plaintiffs and Class Members substantial economic harm.

2. Plaintiffs plead the following widely recognized standards governing the administration of medical professional monitoring programs. These standards reflect governing statutes and regulations, national professional best practice

guidance (such as the Federation of State Physician Health Programs (FSPHP)), addiction medicine and mental health standards of care (such as the American Society of Addiction Medicine), and commonly accepted duties of care that define the duties owed to program participants:

a. Medical professional monitoring programs must never put profits ahead of participant recovery;

b. Medical professional monitoring programs must base all decisions on clinical evidence, not financial gain;

c. Program administrators must provide transparent access to monitoring records, including medical records, evaluations, and test results;

d. Monitoring requirements must be clinically justified and documented;

e. Medical professional monitoring programs must not impose excessive costs on participants or impose sanctions that are not guided by clinical recommendations; and

f. Medical professional monitoring programs must follow evidence-based standards for toxicology testing and frequency.

3. Plaintiffs seek damages and injunctive relief under Montana law for negligence, violation of the Montana Consumer Protection Act, tortious interference

with business relations, and breach of the covenant of good faith and fair dealing. Plaintiffs also seek punitive damages for Defendants' conduct and classwide equitable relief to restore a recovery-oriented program aligned with clinical and best practice standards.

## PLAINTIFFS

4. Plaintiff Chris Thacker is a citizen of the State of Montana, residing in Gallatin County, Montana. Thacker is a physician licensed to practice medicine in Montana.

5. Plaintiff Benjamin Bergstrom is a citizen of the State of Montana, residing in Lewis and Clark County, Montana. Bergstrom is a nurse practitioner licensed in Montana.

6. Plaintiff Kirsten Virag is a citizen of the State of Montana, residing in Lewis and Clark County, Montana. Virag is a registered nurse licensed in Montana.

7. Plaintiff Sarah Carson is a citizen of the State of Montana, residing in Mineral County, Montana. Carson is a registered nurse licensed in Montana.

8. Plaintiff Katherine L. Burke is a citizen of the State of Montana, residing in Silver Bow County, Montana. Burke is a registered nurse licensed in Montana.

9. Plaintiff Melanie Brennan is a citizen of the State of Montana, residing in Carbon County, Montana. Brennan is a registered nurse licensed in Montana.

10. Plaintiff Michelle Muri is a citizen of the State of Montana, residing in Yellowstone County, Montana. Muri is a registered nurse licensed in Montana.

11. Plaintiff Ronni Boyce is a citizen of the State of Montana, residing in Missoula County, Montana. Boyce is a registered nurse licensed in Montana.

12. Plaintiff Charity Gessaman is a citizen of the State of Montana, residing in Yellowstone County, Montana. Gessaman is a registered nurse licensed in Montana.

13. Plaintiff Samantha Pescosolido is a citizen of the State of Montana, residing in Yellowstone County, Montana. Pescosolido is a registered nurse licensed in Montana.

14. Plaintiff Sarah Sheldon is a citizen of the State of Montana, residing in Yellowstone County, Montana. Sheldon is a registered nurse licensed in Montana.

## DEFENDANT

15. Defendant Maximus, Inc. is a Virginia corporation with its principal place of business in McLean, Virginia, and registered with the Montana Secretary of State to conduct business in Montana. Maximus may be served with process through its registered agent, Corporation Service Company, 26 West Sixth Avenue, Helena, MT 59624.

16. The true names or capacities, whether individual, corporate, associated, affiliated, or otherwise of Defendants DOES 1 through 50, inclusive, are unknown

to Plaintiffs, who therefore sue said Defendants by such fictitious names. Upon information and belief, each of the Defendants sued herein as a fictitious name is legally responsible in some manner for the events and happenings referred to herein, and Plaintiffs will seek leave of Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when the same become known to Plaintiffs.

## JURISDICTION AND VENUE

17. Jurisdiction is asserted under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a civil action in which the proposed class exceeds 100 members; at least one class member is a citizen of a state different from any defendant; and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

18. Venue is proper in this Division under Local Rule 3.2(b)(1)(A) because the actions described occurred in this district and one or more plaintiff lives in this Division and District.

## FACTUAL ALLEGATIONS

19. The Montana Department of Labor and Industry ("DLI") administers the Montana Medical Assistance Program ("MMAP"), a compliance monitoring program for healthcare professionals, established under Title 37 of the Montana Code Annotated. The program serves as a disciplinary measure for board licensees

who cannot practice their profession with reasonable skill and safety due to diagnosed substance use disorders, mental health conditions, or physical illnesses. Licensees may also self-refer to the program voluntarily and remain unknown to their licensing board if they follow program requirements. Upon information and belief, as of December 2024, there are approximately 70 licensees in the MMAP, and more than 100 licensees during Maximus' administration of the program.

20. The Federation of State Physician Health Programs (FSPHP) best practice guidelines recommend states administer such assistance programs through not-for-profit entities. Until 2023, DLI used a not-for-profit organization to administer its program. In October 2022, DLI awarded a $1.6 million contract to Maximus, Inc., a for-profit corporation, to administer the MMAP. Upon information and belief, only two other states use a for-profit corporation to administer their healthcare professional assistance programs. Maximus runs the program now called the Montana Recovery Program ("MRP").

21. When Maximus took over the MMAP, the focus of the program shifted from the well-being of the participants and reducing the stigma of substance use and mental health disorders to a punitive program focused on excessive monitoring and profiteering.

22. Maximus owes participants a duty of transparency and accountability regarding processes and procedures to facilitate communication and strengthen

relationships. In its monitoring process, Maximus owes participants a duty to clearly communicate the terms, consequences of noncompliance, and to provide opportunities for participants to review and address concerns. Maximus breached these duties and standards through its failure to clearly explain its policies, procedures, and decisions.

23. Maximus owes participants the duty to ensure its recommendations follow clinical assessments and only to impose participant requirements aligned with professional evaluations. Maximus breached these duties and standards by failing to base participant requirements and decisions on comprehensive professional evaluations, evidence-based practices, and clinical diagnoses that adhere to recognized diagnostic criteria. Maximus' failure to collaborate with treatment providers and disregard for evidence-based practices placed participating at a risk of inappropriate care or monitoring and subjected them to inappropriate program requirements.

24. Maximus owes participants the duty to share with them all evaluations, reports, and documentation about their enrollment and progress in the program. Participants must receive the opportunity to review their agreements, address questions, obtain all information relevant to their participation to ensure informed consent, and review all documentation, including toxicology testing results to be informed about their compliance and testing outcomes. Maximus breached this duty

by refusing to share assessments, clinical evaluations, reports, and toxicology test results. Maximus' breach of these duties undermines participants' ability to knowingly, intelligently and voluntarily participate in the program. Participants' inability to address potential errors in the process violated the duties to provide informed consent and fair treatment.

25. Maximus owes participants the duty to tell them about consequences for noncompliance and criteria for extending monitoring, which should be clinically indicated and communicated to participants. Maximus must clearly define what is noncompliance and the potential consequences for defined violations. If extensions of monitoring are required, those extensions must be based on clinical factors, such as relapse or complicating mental health or medical conditions, with clear documentation and participant notification. Maximus breached these duties by keeping participants in the program for indefinite periods without clinically-justified extensions of monitoring. Maximus arbitrarily prolonged participation, potentially for financial gain, and without regard to participant well-being or evidence-based clinical practices.

26. Maximus owes participants the duty to base noncompliance and sanctions on clinical evidence. Noncompliance sanctions (e.g. increased testing or referral to regulatory agencies) must be based on objective evidence, such as toxicology results or documented failure to meet agreement terms. Relapse or

noncompliance should lead to specific, clinically appropriate responses, such as further treatment, not automatic punitive measures. Maximus breached these duties by erroneous allegations and arbitrary noncompliance sanctions undermining participant trust, unsupported punitive sanctions, prolonged monitoring and indefinite retention in the program. As documented in a recent Montana legislative audit report, Maximus lacks a formalized appeals or internal review process for participants beyond escalating those cases for further review within its own hierarchy.

27. Maximus owes participants the duty to use toxicology testing consistent with clinical assessments. Toxicology must be tailed to a participant's diagnosis and history, with frequency determined by toxicology and treatment standards, avoiding excessive testing that is not clinically justified. Toxicology testing should align with clinical evaluations and focus on deterring or detecting unauthorized substance use, not as a punitive sanction. Maximus breached these duties by requiring excessive testing, potentially for financial gain, which are not tailored to individual clinical assessments. Upon information and belief, Maximus received substantial profits from its toxicology testing requirements by requiring excessive testing, contraindicated by clinical recommendations and professional standards, and by charging grossly excessive fees. The excessive toxicology testing harms participants financially and emotionally. For example, participants regularly had to pay nearly

$300 for one toxicology test and then tested repeatedly the same week, a practice not clinically indicated and unnecessary. Maximus' inflated and excessive testing charges are in stark contrast to toxicology testing fees paid by the state government in other substance use treatment programs like drug treatment courts.

28. Maximus owes participants the duty to provide reliable systems for tracking and documenting referral information and case status to ensure quality assurance and participant engagement. Maximus must maintain record-retention policies to ensure records are accessible to participants and authorized staff. Maximus must facilitate participant access to necessary information to support informed participation and compliance. Maximus breached these duties using an inadequate online system that prevents participants from accessing or verifying information and records and routinely denies participants access to records about their participation.

29. Maximus owes participants transparency about program costs, including fees for testing or required support groups. Maximus must ensure adequate resources for competent case management, with funding structures that avoid conflicts of interest or exploitation of participants. Maximus must ensure financial transparency and accessibility for participants. Maximus breached these duties by lacking transparency regarding its financial practices. Maximus exploits participants by charging fees that are excessive, unexplained, and failing to act in

the participants' best interests and that avoid financial conflicts of interest. Upon information and belief, Maximus denies participants required resources by failing to use a case manager; instead, Maximus uses its program director as its case manager. Despite operating the program in Montana, upon information and belief, its two employees dedicated to the program are located out-of-state.

30. Maximus owes participants the duty to collaborate with treatment providers to ensure appropriate and accessible care, including support groups tailored to participant needs. Maximus must avoid conflicts of interest, including financial arrangements that focus on specific providers without clinical justification. Maximus breached these duties by requiring an exorbitantly expensive support group when free alternatives are available and consistent with participant clinical needs. Maximus exploits participants by charging fees for a support group that are accessible, unnecessary, and inconsistent with clinical standards. Maximus prioritized financial gain over participant well-being, further breaching its duty to provide cost-effective support options.

31. Maximus owes participants the duty to avoid conflicts of interest in all decisions, including those involving evaluators, treatment providers, toxicology testing, and other program service vendors or contractors. Maximus must not maintain a financial or business interest in approved evaluators, providers, toxicology testing, or other program service providers. Treatment providers must be

selected based on their ability to meet clinical standards, with no secondary gain accruing to Maximus from referrals. Maximus breached these duties through its questionable profiteering from requiring participants to use Vault Health for excessive and exorbitantly expensive toxicology testing and Birchwood for excessive and exorbitantly expensive support groups, raising substantial concerns about its profit motive. Upon information and belief, in response to a recent Montana legislative audit request, Maximus declined to provide conflict-of-interest disclosures or access to compliance-related records. The nature of the financial relationship between Maximus and these vendors is unknown but raises serious questions.

32. In the recent Montana legislative audit report, licensees complained about Maximus' administration of the program:







33. The Montana legislative audit report brought to light many of Maximus' breaches of their duties of care: "All individuals who provided additional input expressed dissatisfaction with [Maximus], describing its approach as punitive

rather than supportive. Many alleged unfair treatment, which negatively affected their moral, self-esteem, and mental health. Some expressed fear of retaliation if [Maximus] learned of their survey participation and warned that others may have felt the same." Among the findings of the legislative audit report include:

- Difficulty reaching program staff and receiving timely responses
- The 100 percent testing compliance policy being unrealistic, especially given Montana's rural nature and limited lab testing locations.
- Inconsistent and sometimes conflicting communication from staff regarding program requirements.
- Written guidelines and staff guidance did not always align, leading to noncompliance.
- Claims that monitoring agreement requirements changed mid-program, making requirements unclear.

More seriously, the auditors noted, "Participants and treatment providers indicated that evaluator recommendations are not always followed by [Maximus] staff when they develop monitoring agreements, raising concerns about the program's efficacy, consistency, and fairness.

The legislative auditors also criticized Maximus for implementing no policies and procedures for internal quality assurance practices.

34. Due to Maximus' breach of its duties, participants have suffered financial harm, emotional distress, loss of their license and livelihood, and in one particularly tragic outcome, a participant committed suicide. Maximus did not acknowledge the participant suicide in its required program reports to DLI. Maximus runs the program as punitive, invasive, and punishingly expensive, all to the detriment of its participants.

## CLASS ALLEGATIONS

35. Plaintiffs seek class certification under Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs are members of the class they seek to represent and bring this action individually and on behalf of all similarly situated persons defined as follows:

> All current and former participants in the Montana Medical Assistance Program administered by Maximus, Inc.
>
> Excluded from the Putative Class are: (i) any defendant or any entity in which any defendant has a controlling interest or which has a controlling interest in any defendant, and any of defendants' legal representatives, predecessors, successors, and assigns; (ii) judicial officers to whom this case is assigned; and (iii) any member of the immediate families of excluded persons.

36. Upon information and belief, under Rule 23(a)(1), the class is so numerous that joinder of all members is impracticable.

37. Upon information and belief, under Rule 23(a)(2), Defendants engaged in a standard, uniform course of conduct that harms and affects all class members in a common manner, including:

a. Whether Maximus breached its duties to class members regarding transparency and accountability regarding process and procedures;

b. Whether Maximus breached its duties to class members regarding the alignment of program requirements with clinical evaluations;

c. Whether Maximus breached its duties to class members regarding access to clinical assessments, toxicology results, and participant reports;

d. Whether Maximus breached its duties to class members by indefinitely keeping participants in the program inconsistent with clinical evaluations and evidence-based practices;

e. Whether Maximus breached its duties to class members by failing to adopt clear criteria for assessing noncompliance, failing to tell participants what is noncompliance, and failing to enact policies and procedures for fairly resolving grievances;

f. Whether Maximus breached its duties to class members by adopting excessive toxicology testing requirements;

g. Whether Maximus breached its duties to class members by understaffing its program, using employees in both an administrative and clinical role, and failing to adopt an adequate and

reliable system for tracking and documenting participant information;

h. Whether Maximus breached its duties to class members by failing to provide consistent, adequate, and transparent information on program costs;

i. Whether Maximus breached its duties to class members by requiring excessive, expensive online support group unsupported by clinical assessments; and

j. Whether Maximus breached its duties to class members by profiting from excessive toxicology testing and required support groups.

38. Upon information and belief, under Rule 23(a)(3), Plaintiffs' claims are typical of other class members, their claims arise from the same practice or course of conduct that gives rise to the claims of other class members, and the claims are based on the same legal theories.

39. Upon information and belief, under Rule 23(a)(4), Plaintiffs will fairly and adequately protect the interests of the class, they have no interest antagonistic to those of the rest of the class, and they hired counsel that is qualified, experienced and competent to conduct the litigation.

40. Plaintiffs seek class certification under each independent subpart of Rule 23(b). Prosecuting separate actions would both create a risk of varying

adjudications and such adjudications regarding individual class members would be dispositive of the interests of the other members not parties to the individual adjudications.

Further, Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class.

Finally, there are common questions of law and fact among all members, which predominate over any individual question; this action is superior to any other form of action; that the interest of individuals are best served by a class action; that it is desirable to concentrate the litigation in this forum which will avoid inconsistent results and duplicative costs; and there is no difficulty in the maintenance of the case as a class action in that the identities of class members and the amount of the alleged damages are easily determined and calculated by using the business records of Defendants.

## COUNT I
## Negligence

41. Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.

42. Maximus owed Plaintiffs and Class Members the specific duties described herein and a general duty of care to administer its program consistent with industry standards.

43. Maximus breached its duties to Plaintiffs and Class Members as described herein.

44. As a direct and proximate result of Maximus' breach of its duties described herein, Plaintiffs and Class Members suffered foreseeable general and special damages in an amount that exceeds $75,000.

## COUNT II
## Montana Consumer Protection Act ("MCPA")
## Mont. Code Ann. § 30-14-101

45. Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.

46. Plaintiffs and Class Members are consumers as defined in § 30-14-102(1), MCA.

47. Maximus is a "person" as defined in § 30-14-102(6), MCA.

48. Maximus engaged in "trade" and "commerce" as defined in § 30-14-102(8), MCA.

49. Under § 30-14-103, MCA, it is unlawful for Maximus to engage in unfair or deceptive acts or practices in the conduct of any trade or commerce.

50. Maximus engaged in deceptive or unfair acts and practices which offend established public policies and which are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

51. Although § 30-14-133, MCA provides for individual but not class actions under the MCPA, Montana federal courts, following precedent in *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.,* 550 U.S. 393 (2010), have held Fed. R. Civ. P. 23 preempts state statutes (including the MCPA) prohibiting class action suits.

52. As a direct and proximate result of Maximus' unlawful conduct, Plaintiffs and Class Members are entitled to an award of actual damages, statutory damages, treble damages, and an award of reasonable attorney's fees and costs under § 30-14-133, MCA, as allowed by law.

## COUNT III
## Tortious Interference with Business Relations

53. Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.

54. Plaintiffs and Class Members have a valid business relationship in their professional licenses and employment.

55. Maximus was informed and actually knew of the above-described business relationships.

56. Maximus intentionally interfered with Plaintiffs and Class Members' professional licenses and employment.

57. By breaching its duties to Plaintiffs and Class Members, Maximus acted without right or justifiable cause to interfere with Plaintiffs' and Class Members' business relationships.

58. Plaintiffs and Class Members suffered harm because Maximus' interference with their business relationships contradicted professional standards and prolonged or delayed return to their profession.

59. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class Members suffered foreseeable general and special damages in an amount to be determined at trial but which exceed $75,000.

## COUNT IV
## Breach of Covenant of Good Faith and Fair Dealing

60. Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.

61. Montana law expressly and impliedly incorporates a covenant of good faith and fair dealing into Maximus' agreements with Plaintiffs and Class Members.

62. Maximus did not act with honesty in fact or observe reasonable commercial standards of fair dealing, thus breaching the contractual covenant of good faith and fair dealing.

63. A special relationship exists between Maximus and Plaintiffs and Class Members. Based on that special relationship, in addition to recovering contract damages, Plaintiffs and Class Members are entitled to an award of foreseeable

general and special damages in an amount to be determined at trial but which exceed $75,000.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs, individually and on behalf of all similarly situated persons, demand monetary damages under Montana law, punitive damages under § 27-1-221, MCA, all pre-judgment and post-judgment interest as allowed by law, attorney's fees and costs as allowed by law, and such further, other or additional relief as may be just and proper.

Dated: October 28, 2025.

CONNER, MARR & PINSKI, PC

/s/ Gregory G. Pinski
Gregory G. Pinski
P.O. Box 3028
520 Third Avenue North
Great Falls, MT 59403-3028
Telephone: (406) 727-3550
Facsimile: (406) 727-1640
greg@mttrials.com
ATTORNEYS FOR PLAINTIFFS

## **JURY DEMAND**

Plaintiffs demand a jury trial on all issues triable to a jury.

Dated: October 28, 2025.

CONNER, MARR & PINSKI, PC

/s/ Gregory G. Pinski
Gregory G. Pinski
P.O. Box 3028
520 Third Avenue North
Great Falls, MT 59403-3028
Telephone: (406) 727-3550
Facsimile: (406) 727-1640
greg@mttrials.com
ATTORNEYS FOR PLAINTIFFS